IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| EMW WOMEN'S SURGICAL CENTER, P.S.C., on behalf of itself, its staff, and its patients; ERNEST W. MARSHALL, M.D., on behalf of himself and his patients,<br><br>Plaintiffs,<br><br>v.<br><br>ANDREW G. BESHEAR, in his official capacity as Attorney General of the Commonwealth of Kentucky; ADAM MEIER, in his official capacity as Secretary of Kentucky's Cabinet for Health and Family Services; MICHAEL S. RODMAN, in his official capacity as Executive Director of the Kentucky Board of Medical Licensure; and THOMAS B. WINE, in his official capacity as Commonwealth's Attorney for the 30th Judicial Circuit of Kentucky,<br><br>Defendants. | Case No.:  3:19-CV-178-DJH |

## VERIFIED COMPLAINT

Plaintiffs, by and through their attorneys, bring this Complaint against the above-named Defendants, their employees, agents, and successors in office, and in support thereof state the following:

## INTRODUCTION

1. This is a constitutional challenge to H.B. 5 (hereinafter "the Act") (attached as Exhibit A), Kentucky's latest attempt to prevent women from exercising their constitutionally protected right to abortion. The Act strips a woman of her right to have an abortion if the

Commonwealth disapproves of her reason for seeking the care.[1]  In particular, the Act makes it a crime to provide an abortion for a woman whose decision is influenced by either a diagnosis or the potential for a diagnosis of a disability, or the sex, race, color, or national origin of the embryo or fetus.  In prying into the reasons for the woman's decision and taking away her right to make the ultimate decision whether to continue her pregnancy, the Act strikes at the very core of the Fourteenth Amendment right to privacy and autonomy and will inflict irreparable harm on Kentuckians if it is allowed to take effect.

2. The Kentucky Legislature passed the Act on March 13, and it will then go to Governor Bevin for his signature.  Because of the statute's unusual "emergency" clause, it will take effect immediately upon his signature, instantly criminalizing certain pre-viability abortions in the Commonwealth.  Governor Bevin will sign the Act, just as he has signed every abortion restriction presented to him. Indeed, during a press interview about another abortion restriction, Governor Bevin said that he would "love to see" the time when people are unable to obtain abortion in the Commonwealth.[2]

3. The Act is unconstitutional because it bans abortion, under certain circumstances, prior to viability.  Plaintiffs challenge the Act because it undermines their mission to honor and support the decisions their patients make, whether it is to continue or to end a pregnancy based on their own personal circumstances and what is best for themselves and their families.  Yet, in violation of more than four decades of Supreme Court jurisprudence, the Act wrests this personal decision from a woman and her family and deprives her of the ability to make this personal

---

[1] Plaintiffs use "women" in this complaint as a short-hand for patients seeking abortion care, but note that gender non-conforming patients and men who are transgender may also utilize such services and would thus also suffer irreparable harm as a result of the Act.

[2] Benjamin Fearnow, *Republican Governor Blames Mass Shootings on Zombies, Abortions, US 'Culture Of Death'—Not Guns* (November 14, 2018) *available at:* https://www.newsweek.com/matt-bevin-zombies-abortion-death-obsessed-mass-shootings-culture-kentucky-1215778

decision.

4. Unless this Court immediately grants a temporary restraining order or preliminary injunction, Plaintiffs will be forced to turn away patients seeking abortion care. This will cause Plaintiffs' patients irreparable harm, including the loss of their constitutional right to obtain an abortion and their ability to make fundamental decisions about their health care.

5. Plaintiffs seek declaratory and injunctive relief against the Act pursuant to 42 U.S.C. § 1983. Unless such relief is granted, Plaintiffs and their staff will be subject to criminal penalties for performing abortions, and/or their patients will be denied their constitutional right to obtain a pre-viability abortion.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343.

7. Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, Rules 57 and 65 of the Federal Rules of Civil Procedure, and the general legal and equitable powers of this Court.

8. Venue is appropriate under 28 U.S.C § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occur in this judicial district.

## PLAINTIFFS

9. Plaintiff EMW Women's Surgical Center, P.S.C. ("EMW"), a Kentucky corporation located in Jefferson County (Louisville), is the sole licensed abortion facility located in Kentucky. EMW has been providing reproductive health care, including abortion since the 1980s. EMW sues on behalf of itself, its physicians, staff, and its patients.

10. Plaintiff Ernest W. Marshall, M.D., is the owner of EMW, where he provides abortion, and he is a board-certified obstetrician-gynecologist. He sues on his own behalf and on behalf of his patients.

## DEFENDANTS

11. Defendant Andrew G. Beshear is the Attorney General of the Commonwealth of Kentucky and, as such, is the Commonwealth's chief law enforcement officer. In his capacity as Attorney General, Defendant Beshear may initiate or participate in criminal prosecutions for violations of the Act at the request of, *inter alia*, the Governor, any court of the Commonwealth, or local officials. KRS 15.190; KRS 15.200. Defendant Beshear is likewise charged with seeking injunctive relief against "abortion facilities" to "prevent violations of the provisions of KRS Chapter 216B regarding abortion facilities or the administrative regulations promulgated in furtherance thereof." KRS 15.241. Those regulations include the requirement that all abortion facilities ensure "compliance with . . . state . . . laws," including the Act. 902 KAR 20:360, § 5(1)(a). Defendant Beshear is sued in his official capacity.

12. Defendant Adam Meier is the secretary of the Cabinet for Health and Family Services ("the Cabinet") —an agency of the Commonwealth of Kentucky. In his capacity as secretary of the Cabinet, Defendant Meier is charged with, *inter alia*, oversight and licensing of abortion providers and the regulatory enforcement of those facilities. KRS 216B.0431(1); 902 KAR 20:360, § 5(1)(a). The Cabinet's regulations include the requirement that all abortion facilities ensure "compliance with . . . state . . . laws," including the Act. 902 KAR. 20:360, § 5(1)(a). Defendant Meier is sued in his official capacity.

13. Defendant Michael S. Rodman serves as Executive Director of the Kentucky Board of Medical Licensure ("KBML" or "the Board"), which is located in Jefferson County.

4

Defendant Rodman and the Board possess authority to pursue disciplinary action up to and including license revocation against Kentucky physicians for violating the Act. KRS 311.565; KRS 311.606. Defendant Rodman is sued in his official capacity.

14. Defendant Thomas B. Wine serves as Commonwealth's Attorney for the 30th Judicial Circuit of Kentucky. In this capacity, Defendant Wine has authority to enforce the Act's criminal penalties in Jefferson County, where Plaintiffs are located. *See* KRS 15.725(1); KRS 23A.010(1). Defendant Wine is sued in his official capacity.

## STATUTORY FRAMEWORK

15. The Act makes it a crime for any person to "intentionally perform or induce or attempt to perform or induce an abortion on a pregnant woman if the person has knowledge that the pregnant woman is seeking the abortion, in whole or in part, because of" the sex, race, color, national origin, or diagnosis or potential diagnosis of Down syndrome or "any other disability." The Act defines "any other disability" broadly to include "any disease, defect, or disorder, whether or not genetically inherited." The Act then lists some conditions that are considered "disabilit[ies]," but makes clear that the term "is not limited to those conditions." The only exclusion from the term is for "lethal fetal anomalies," a term that is not defined by the Act.

16. The Act provides an extremely limited exception "in the case of a medical emergency." A "medical emergency" is defined as "any condition which, on the basis of the physician's good-faith clinical judgment, so complicates the medical condition of a pregnant female as to necessitate the immediate abortion of her pregnancy to avert her death or for which a delay will create serious risk of substantial and irreversible impairment of a major bodily function." Act § 1(2); KRS 311.720.

17. A violation of the prohibition constitutes a Class D felony, which is punishable by

5

imprisonment of one to five years. KRS 311.990(22)(23),(24); KRS 532.060(2)(d).

18. Any physician who violates the prohibition is also subject to mandatory license revocation by the State Board of Medical Licensure. Any individual or licensed abortion facility is also subject to mandatory license revocation by the Cabinet for Health and Family Services for violation of the prohibition. Act § 1(3)-1(6).

19. Furthermore, the Act mandates that the physician or the physician's delegate inform a pregnant woman at least twenty-four (24) hours prior to abortion before that "[i]t is illegal in Kentucky to intentionally perform an abortion, in whole or in part, because of the sex of the unborn child; the race, color, or national origin of the unborn child; or the diagnosis, or potential diagnosis, of Down syndrome or any other disability."

20. Any physician who fails to abide by this provision of the Act is subject to potential medical license denial, probation, suspension, limitation, restriction, or revocation by the State Board of Medical Licensure. KRS 311.725; KRS 311.595.

21. The Act takes effect immediately upon Governor Bevin's signature. There is no requirement that Governor Bevin sign bills in public or notify the public immediately upon signing a bill. In fact, Governor Bevin signed the last abortion bill, House Bill 454 (2018), which took effect immediately, in private and without notification to the public or EMW. As a result, it is impossible for Plaintiffs to know precisely when the Act has taken effect.

## FACTUAL ALLEGATIONS

22. Women seek abortions for a variety of deeply personal reasons, including familial, medical, and financial. Some women have abortions because they conclude that it is not the right time in their lives to have a child or to add to their families: For example, some decide to end a pregnancy because they want to pursue their education; some because they feel

they lack the necessary economic resources or level of partner support or stability; some because they are concerned that adding a children to their family will make them less able to adequately provide and care for their existing children. Some women seek abortions to preserve their life or health; some because they have become pregnant as a result of rape; and others because they decide not to have children at all. Some women decide to have an abortion because of an indication or diagnosis of a fetal medical condition or anomaly. Some families do not feel they have the resources—financial, medical, educational, or emotional—to care for a child with special needs or to simultaneously provide for the children they already have. The decision to terminate a pregnancy for any reason is motivated by a combination of diverse, complex, and interrelated factors that are intimately related to the individual woman's values and beliefs, culture and religion, health status and reproductive history, familial situation, and resources and economic stability.

23. Legal abortion is one of the safest medical procedures in the United States, and is substantially safer than continuing a pregnancy through to childbirth.

24. Approximately one in four women in this country will have an abortion by age forty-five. A majority of women having abortions (61%) already have at least one child, while most (66%) also plan to have a child or additional children in the future.

25. Pregnancy is commonly measured from the first day of a woman's last menstrual period ("lmp"). Fertilization typically occurs around two weeks lmp. Current Kentucky law prohibits abortion at 21.6 weeks lmp, which is prior to viability. Plaintiffs provide abortion services through 21.6 weeks lmp.

26. Prior to performing an abortion, Plaintiffs provide non-directive patient counseling to each patient, which means they listen to, support, and provide information to the

7

patient, without directing her course of action. That process is designed to ensure that patients are well-informed with respect to all of their options, including terminating the pregnancy; carrying the pregnancy to term and parenting; and carrying to term and placing the baby for adoption. In addition, the process is designed to ensure that the woman's choice is voluntary and not coerced.

27. Although some of Plaintiffs' patients disclose at least some information about the reasons they are seeking an abortion during these non-directive discussions, Plaintiffs do not require that patients disclose any or all of their reasons for seeking an abortion.

28. Plaintiffs are aware that some of their patients seek abortions based at least in part on a potential or confirmed prenatal diagnosis of a disability as defined by the Act. Under the Act, these patients would be prohibited from obtaining an abortion.

29. The Act prohibits intentionally performing or attempting to perform an abortion if a person "has knowledge" that a patient "is seeking the abortion in whole or in part" because of the prohibited reasons, but fails to define what constitutes "knowledge" that gives rise to the Act's severe criminal and licensure penalties.

30. Without any standardized or objective definition of "having knowledge" of the reason for a patient's decision, Plaintiffs cannot know the standard by which Defendants will ultimately judge their conduct.

31. Because it is unclear when a person has "knowledge" that a patient is seeking an abortion under prohibited circumstances, Plaintiffs cannot be certain that their good faith efforts to comply with the Act meet the Act's requirements, and thus run the risk of devastating criminal penalties and mandatory license revocation. Indeed, violating the Act is a felony, and penalties for violation include mandatory revocation of the physician's and abortion facility's licenses.

Given the Cabinet for Health and Family Services' particular hostility towards Plaintiffs, Plaintiffs have particular concern that their medical care decisions will be scrutinized under an unpredictable standard.

32. While the Act lists a number of specific disabilities, including Down Syndrome, dwarfism, and amelia, the Act's prohibition is not limited to those medical conditions. Rather, the Act makes it a crime for a woman to have an abortion if her decision is motivated in whole *or in part* by the diagnosis or potential diagnosis of "any disability," including but not limited to any physical, mental, or intellectual disability, or any physical or mental disease.

33. The American College of Obstetricians and Gynecologists ("ACOG"), which is the preeminent professional association for OB/GYNs, recommends that all women should be counseled about prenatal genetic screening and diagnostic testing options as early as possible in the pregnancy, ideally at the first prenatal visit. ACOG recommends that all women, regardless of age, be offered the option of screening or diagnostic testing for fetal genetic disorders. ACOG also recommends that women with positive screening test results be offered further counseling and diagnostic testing.

34. The Act provides an exception for circumstances where a woman has decided to have an abortion because of diagnosis or potential diagnosis of "lethal fetal anomaly," but that term is not statutorily defined. It is unclear whether this exception from criminal liability applies, for example, only to circumstances when the fetus would not be born alive or whether it includes circumstances when the child is likely to die would die within the first few months or years of life.

35. Thus, Plaintiffs face a very real threat of arbitrary enforcement, particularly given Defendants' repeated efforts to eliminate all access to abortion in the Commonwealth.[3]

36. The second exception for "medical emergencies" is extremely limited, and would not protect a patient who needs an abortion to protect her health but was not yet facing a medical emergency.

37. For example, some women with high-risk pregnancies—because of advanced maternal age or some other underlying medical condition—have complications that lead them to end their pregnancies to preserve their lives or health. In some of these situations, there is also a diagnosis or potential diagnosis of a fetal anomaly.

38. There are numerous conditions that pose a substantial mortality risk in pregnancy, including pulmonary hypertension and maternal cardiac disease, some with mortality risks as high as 50%.

39. The Act's extremely narrow exception for "medical emergencies" would not allow a woman whose health or life was at risk to decide to have an abortion if the diagnosis or potential diagnosis of a fetal anomaly was part of her decision, until her condition has so deteriorated as to constitute a medical emergency, at which point the procedure would be permitted under this law. This would unnecessarily jeopardize the health and even the life of the woman.

40. Because women have a right to choose an abortion before viability for any reason, Plaintiffs do not require patients to disclose any or all of their reasons for seeking an abortion.

---

[3] Defendants have repeatedly targeted Plaintiffs, and tried to eliminate abortion access in Kentucky. Plaintiffs now operate the only abortion clinic in the Commonwealth. *See* Sheryl Gay Stolberg, *Legal Fight Could Make Kentucky Only State With No Abortion Clinic*, N.Y. Times, May 2, 2017, https://www.nytimes.com/2017/05/02/us/kentucky-abortion-clinic.html.

41. The Act will ban abortion for some women. Being forced to continue a pregnancy against her will can pose a risk to a woman's physical, mental, and emotional health, and even her life, as well as to the stability and wellbeing of her family, including her existing children.

42. Plaintiffs wish to continue providing safe and nonjudgmental abortion care to patients who have decided to terminate their pregnancies, regardless of the particular reason for the decision.

43. Absent an injunction, Plaintiffs will have no choice but to turn away some patients in need of abortion care. The constitutional rights of Kentucky women would suffer irreparably, as would their well-being and dignity. The Act irreparably harms Plaintiffs, Plaintiffs' staff, and their patients.

## **CLAIMS FOR RELIEF**

### COUNT I

(Substantive Due Process)

44. Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 43.

45. By prohibiting a woman from making the ultimate decision whether to terminate a pregnancy prior to viability, the Act violates the rights to liberty and privacy secured to Plaintiffs' patients by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

### COUNT II

(Due Process—Vagueness)

46. Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 43.

47. By failing to give Plaintiffs fair notice of how to comply with the mandates of the Act, and imposing serious criminal and licensure penalties, the Act violates Plaintiffs' right to due process as guaranteed by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

## INJUNCTIVE RELIEF

48. If the Act is allowed to take effect, Plaintiffs and their patients will be subject to irreparable harm for which no adequate remedy at law exists.

49. Enforcement of the Act will cause irreparable harm by threatening Plaintiffs and their staff with substantial criminal penalties for providing abortion services and preventing Plaintiffs' patients from obtaining an abortion in Kentucky, thereby causing them to suffer significant medical, emotional, and other harm.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs ask this Court:

A. To immediately issue a temporary restraining order and/or preliminary injunction, and a permanent injunction, restraining Defendants, their employees, agents, and successors in office from enforcing the Act.

B. To enter a judgment declaring that the Act violates the United States Constitution.

C. To award Plaintiffs their attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

D. To grant such other and further relief as the Court deems just and proper.

Dated: March 14, 2019

                                                    s/Amy D. Cubbage
Amy D. Cubbage
Ackerson & Yann, PLLC
734 West Main Street, Suite 200
Louisville, Kentucky 40202
(502) 583-7400
acubbage@ackersonlegal.com

Heather L. Gatnarek
ACLU of Kentucky
325 Main Street, Suite 2210
Louisville, Kentucky 40202
(502) 581-9746
heather@aclu-ky.org

Brigitte Amiri*
Jennifer Dalven*
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, New York 10004
(212) 549-2633
bamiri@aclu.org
jdalven@aclu.org

Leah Godesky*
O'Melveny & Myers
7 Times Square
New York, NY 10036
(212) 326-2000
lgodesky@omm.com

Kendall Turner*
O'Melveny & Myers
1625 Eye St. NW
Washington, DC 20006
(202) 383-5300
kendallturner@omm.com

*pro hac vice motions forthcoming*

ATTORNEYS FOR PLAINTIFFS

## DECLARATION

I declare under penalty of perjury that the statements contained in the Complaint are true and accurate to the best of my knowledge and belief.

*Ernest W. Marshall, M.D.*
Ernest W. Marshall, M.D.