## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION

| | |
|---|---|
| EMW WOMEN'S SURGICAL CENTER, P.S.C., on behalf of itself, its staff, and its patients; ERNEST W. MARSHALL, M.D., on behalf of himself and his patients,<br><br>   Plaintiffs,<br><br> v.<br><br>ANDREW G. BESHEAR, in his official capacity as Attorney General of the Commonwealth of Kentucky; ADAM MEIER, in his official capacity as Secretary of Kentucky's Cabinet for Health and Family Services; MICHAEL S. RODMAN, in his official capacity as Executive Director of the Kentucky Board of Medical Licensure; and THOMAS B. WINE, in his official capacity as Commonwealth's Attorney for the 30th Judicial Circuit of Kentucky,<br><br>   Defendants. | Case No.: 3:19-cv-00178-DJH |

## **VERIFIED AMENDED COMPLAINT**

Plaintiffs, by and through their attorneys, bring this Complaint against the above-named Defendants, their employees, agents, and successors in office, and in support thereof state the following:

## **INTRODUCTION**

1. This is a constitutional challenge to Senate Bill 9 (hereinafter "6-week Ban"), attached as Exhibit A, and House Bill 5 (hereinafter "Reason Ban"), attached as Exhibit B. In direct conflict with *Roe v. Wade*, 410 U.S. 113 (1973), and more than four decades of precedent affirming *Roe*'s central holding, the two Bans criminalize pre-viability abortions. Specifically, the 6-week

Ban makes it a crime to perform an abortion after a fetal heartbeat can be detected, which generally occurs around six weeks in pregnancy, when many people are unaware they are pregnant. In so doing, the 6-week Ban will prohibit approximately 90% of the abortions currently performed in the Commonwealth. Furthermore, the Reason Ban makes it a crime to provide an abortion for a woman whose decision is influenced by either a diagnosis or the potential for a diagnosis of a disability, or the sex, race, color, or national origin of the embryo or fetus. Both Bans violate the Fourteenth Amendment to the United States Constitution, and will inflict irreparable harm on Kentuckians if they are allowed to take effect.

2. The Kentucky Legislature passed the 6-week Ban on March 14, 2019 and the Reason Ban on March 13, 2019, and will send them to Governor Bevin for his signature. Because of the Bans' unusual "emergency" clauses, they will take effect immediately upon his signature, instantly criminalizing most abortions in the Commonwealth. Governor Bevin will sign the Bans. Indeed, he said, about the 6-week Ban, that "I hope to be on my desk here soon so I can sign this into law."[1] Furthermore, during a press interview about another abortion restriction, he said that he would "love to see" the time when people are unable to obtain abortion in the Commonwealth.[2]

3. Unless this Court immediately grants a temporary restraining order or preliminary or permanent injunction, Plaintiffs will be forced to immediately turn away patients seeking abortion care.

4. Women seek abortion for a variety of reasons, including to care for their existing children or to enable them to leave an abusive partner. Each woman has her own, deeply personal

---

[1] https://www.facebook.com/GovMattBevin/videos/398571394240662.

[2] Benjamin Fearnow, *Republican Governor Blames Mass Shootings on Zombies, Abortions, Us 'Culture Of Death'—Not Guns*, Newsweek, Nov. 14, 2018, https://www.newsweek.com/matt-bevin-zombies-abortion-death-obsessed-mass-shootings-culture-kentucky-1215778.

reasons for making her abortion decision.  Absent an immediate injunction, the Bans will prevent Plaintiffs' patients from exercising their fundamental constitutional right to decide whether to have an abortion prior to viability, causing them irreparable harm.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343.

6. Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, Rules 57 and 65 of the Federal Rules of Civil Procedure, and the general legal and equitable powers of this Court.

7. Venue is appropriate under 28 U.S.C § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occur in this judicial district.

## PLAINTIFFS

8. Plaintiff EMW Women's Surgical Center, P.S.C. ("EMW"), a Kentucky corporation located in Jefferson County (Louisville), is the sole licensed abortion facility located in Kentucky.  EMW has been providing reproductive health care, including abortion, since the 1980s.  EMW sues on behalf of itself, its physicians, staff, and its patients.

9. Plaintiff Ernest W. Marshall, M.D., is the owner of EMW, where he provides abortion, and he is a board-certified obstetrician-gynecologist.  He sues on his own behalf and on behalf of his patients.

## DEFENDANTS

10. Defendant Andrew G. Beshear is the Attorney General of the Commonwealth of Kentucky and, as such, is the Commonwealth's chief law enforcement officer.  In his capacity as Attorney General, Defendant Beshear may initiate or participate in criminal prosecutions for violations of the Bans at the request of, *inter alia*, the Governor, any court of the

Commonwealth, or local officials.  KRS 15.190, 15.200.  Defendant Beshear is likewise charged with seeking injunctive relief against "abortion facilities" to "prevent violations of the provisions of KRS Chapter 216B regarding abortion facilities or the administrative regulations promulgated in furtherance thereof."  KRS 15.241.  Those regulations include the requirement that all abortion facilities ensure "compliance with . . . state . . . laws," including the Bans.  902 KAR 20:360, § 5(1)(a).  Defendant Beshear is sued in his official capacity.

11. Defendant Adam Meier is the secretary of the Cabinet for Health and Family Services ("the Cabinet") – an agency of the Commonwealth of Kentucky.  In his capacity as secretary of the Cabinet, Defendant Meier is charged with, *inter alia*, oversight and licensing of abortion providers and the regulatory enforcement of those facilities.  KRS 216B.0431(1); 902 KAR 20:360, § 5(1)(a).  The Cabinet's regulations include the requirement that all abortion facilities ensure "compliance with . . . state . . . laws," including the Bans.  902 KAR. 20:360, § 5(1)(a).  Defendant Meier is sued in his official capacity.

12. Defendant Michael S. Rodman serves as Executive Director of the Kentucky Board of Medical Licensure ("KBML" or "the Board"), which is located in Jefferson County.  Defendant Rodman and the Board possess authority to pursue disciplinary action up to and including license revocation against Kentucky physicians for violating the Bans.  KRS 311.565; KRS 311.606.  Defendant Rodman is sued in his official capacity.

13. Defendant Thomas B. Wine serves as Commonwealth's Attorney for the 30th Judicial Circuit of Kentucky.  In this capacity, Defendant Wine has authority to enforce the Bans' criminal penalties in Jefferson County, where Plaintiffs are located.  *See* KRS 15.725(1); KRS 23A.010(1).  Defendant Wine is sued in his official capacity.

## STATUTORY FRAMEWORK

### 6-Week Ban

14. If a woman's pregnancy is in the uterus, the 6-week Ban requires the doctor who intends to perform an abortion to determine whether there is a fetal heartbeat, and if there is a heartbeat, it is a crime to "caus[e] or abet[] the termination of" the pregnancy. S.B. 9 § 4(1), 6(1).

15. The 6-week Ban has only two very limited exceptions. It permits abortion after a heartbeat is detected only if the abortion is necessary to 1) prevent the woman's death, or 2) to prevent a "substantial and irreversible impairment of a major bodily function." S.B. 9 § 6(2)(a). "Substantial and irreversible impairment of a major bodily function" means "any medically diagnosed condition that so complicates the pregnancy of the woman as to directly or indirectly cause the substantial and irreversible impairment of a major bodily function. A medically diagnosed condition that constitutes a 'serious risk of the substantial and irreversible impairment of a major bodily function' includes pre-eclampsia, inevitable abortion, and premature rupture of the membranes, but does not include a condition related to the woman's mental health." KRS 311.781(8).

16. A violation of the 6-week Ban is a Class D felony, which is punishable by imprisonment of one to five years. KRS 311.990(22)(23); KRS 532.060(2)(d). A woman also may bring a civil action for violation of the 6-week Ban. S.B. 9 § 9.

17. The 6-week Ban takes effect immediately upon Governor Bevin's signature. There is no requirement that Governor Bevin sign bills in public or notify the public immediately upon signing a bill. In fact, Governor Bevin signed the last abortion bill, House Bill 454 (2018), which took effect immediately, in private and without notification to the public or EMW. As a result, it is impossible for Plaintiffs to know precisely when the 6-week Ban has taken effect.

**Reason Ban**

18. The Reason Ban makes it a crime for any person to "intentionally perform or induce or attempt to perform or induce an abortion on a pregnant woman if the person has knowledge that the pregnant woman is seeking the abortion, in whole or in part, because of" the sex, race, color, national origin, or diagnosis or potential diagnosis of Down syndrome or "any other disability." The Reason Ban defines "any other disability" broadly to include "any disease, defect, or disorder, whether or not genetically inherited." It then lists some conditions that are considered "disabilit[ies]," but makes clear that the term "is not limited to those conditions." The only exclusion from the term is for "lethal fetal anomalies," a term that is not defined by the Reason Ban. H.B. 5 §1.

19. The Reason Ban provides an extremely limited exception "in the case of a medical emergency." A "medical emergency" is defined as "any condition which, on the basis of the physician's good-faith clinical judgment, so complicates the medical condition of a pregnant female as to necessitate the immediate abortion of her pregnancy to avert her death or for which a delay will create serious risk of substantial and irreversible impairment of a major bodily function." H.B. 5 § 1(2); KRS 311.720.

20. A violation of the prohibition constitutes a Class D felony, which is punishable by imprisonment of one to five years. H.B. 5 § 4(22); KRS 532.060(2)(d).

21. Any physician who violates the prohibition is also subject to mandatory license revocation by the State Board of Medical Licensure. Any individual or licensed abortion facility is also subject to mandatory license revocation by the Cabinet for Health and Family Services for violation of the prohibition. H.B. 5 § 1(4)-1(5).

22. Furthermore, the Reason Ban mandates that the physician or the physician's

delegate inform a pregnant woman at least twenty-four (24) hours prior to abortion before that "[i]t is illegal in Kentucky to intentionally perform an abortion, in whole or in part, because of the sex of the unborn child; the race, color, or national origin of the unborn child; or the diagnosis, or potential diagnosis, of Down syndrome or any other disability." H.B. 5 § 3(4).

23. Any physician who fails to abide by this provision of the Reason Ban is subject to potential medical license denial, probation, suspension, limitation, restriction, or revocation by the State Board of Medical Licensure. KRS 311.725; KRS 311.595.

24. The Reason Ban, like the 6-week Ban, takes effect immediately upon Governor Bevin's signature.

## FACTUAL ALLEGATIONS

25. Women seek abortions for a variety of deeply personal reasons, including familial, medical, and financial. Some women have abortions because they conclude that it is not the right time in their lives to have a child or to add to their families: For example, some decide to end a pregnancy because they want to pursue their education; some because they feel they lack the necessary economic resources or level of partner support or stability; some because they are concerned that adding a children to their family will make them less able to adequately provide and care for their existing children. Some women seek abortions to preserve their life or health; some because they have become pregnant as a result of rape; and others because they decide not to have children at all. Some women decide to have an abortion because of an indication or diagnosis of a fetal medical condition or anomaly. Some families do not feel they have the resources—financial, medical, educational, or emotional—to care for a child with special needs or to simultaneously provide for the children they already have. The decision to terminate a pregnancy for any reason is motivated by a combination of diverse, complex, and

interrelated factors that are intimately related to the individual woman's values and beliefs, culture and religion, health status and reproductive history, familial situation, and resources and economic stability.

26. Approximately one in four women in this country will have an abortion by age forty-five. A majority of women having abortions (61%) already have at least one child, while most (66%) also plan to have a child or additional children in the future.

27. Legal abortion is one of the safest medical procedures in the United States, and is substantially safer than continuing a pregnancy through to childbirth.

28. Pregnancy is commonly measured from the first day of a woman's last menstrual period ("lmp"). A woman's menstrual cycle is usually four weeks. Fertilization typically occurs around two weeks lmp. The medical profession considers pregnancy to actually begin when a fertilized egg implants in the uterus, typically around three weeks lmp, approximately a week before a woman with a typical and regular menstrual cycle will expect to get her period. A full term pregnancy is approximately forty weeks as measured from the woman's lmp.

29. In a normally developing embryo, cells that form the basis for development of the heart later in gestation produce cardiac activity that can be detected with ultrasound.

30. In early pregnancy, Plaintiffs typically performs a vaginal ultrasound to date the pregnancy.

31. Using vaginal ultrasound, cardiac activity is generally detectible beginning at approximately six weeks lmp.

32. Prior to the time a heartbeat is generally detectible, many women do not know they are pregnant. This is particularly true for women who have irregular periods, who have certain medical conditions, who have been using contraceptives, or who are breastfeeding.

33. Even for women with highly regular periods, six weeks lmp will be just two weeks after they have missed their period.

34. Six weeks is a previability point in pregnancy. The earliest that fetuses can become viable is months after this point, typically around 24 weeks lmp.

35. Current Kentucky law prohibits abortion after 21.6 weeks lmp, which is before viability. KRS 311.782.

36. Approximately 90% of abortions at EMW take place after six weeks lmp.

37. Prior to performing an abortion, Plaintiffs provide non-directive patient counseling to each patient, which means they listen to, support, and provide information to the patient, without directing her course of action. That process is designed to ensure that patients are well-informed with respect to all of their options, including terminating the pregnancy; carrying the pregnancy to term and parenting; and carrying to term and placing the baby for adoption. In addition, the process is designed to ensure that the woman's choice is voluntary and not coerced.

38. Although some of Plaintiffs' patients disclose at least some information about the reasons they are seeking an abortion during these non-directive discussions, Plaintiffs do not require that patients disclose any or all of their reasons for seeking an abortion.

39. Plaintiffs are aware that some of their patients seek abortions based at least in part on a potential or confirmed prenatal diagnosis of a disability as defined by the Reason Ban. Under the Reason Ban, these patients would be prohibited from obtaining an abortion.

40. The Reason Ban prohibits intentionally performing or attempting to perform an abortion if a person "has knowledge" that a patient "is seeking the abortion in whole or in part"

because of the prohibited reasons, but fails to define what constitutes "knowledge" that gives rise to the Reason Ban's severe criminal and licensure penalties.

41. Without any standardized or objective definition of "having knowledge" of the reason for a patient's decision, Plaintiffs cannot know the standard by which Defendants will ultimately judge their conduct.

42. Because it is unclear when a person has "knowledge" that a patient is seeking an abortion under prohibited circumstances, Plaintiffs cannot be certain that their good faith efforts to comply with the Reason Ban meet its requirements, and thus run the risk of devastating criminal penalties and mandatory license revocation. Indeed, violating the Reason Ban is a felony, and penalties for violation include mandatory revocation of the physician's and abortion facility's licenses. Given the Cabinet for Health and Family Services' particular hostility towards Plaintiffs, Plaintiffs have particular concern that their medical care decisions will be scrutinized under an unpredictable standard.

43. While the Reason Ban lists a number of specific disabilities, including Down Syndrome, dwarfism, and amelia, the Reason Ban's prohibition is not limited to those medical conditions. Rather, the Reason Ban makes it a crime for a woman to have an abortion if her decision is motivated in whole *or in part* by the diagnosis or potential diagnosis of "any disability," including but not limited to any physical, mental, or intellectual disability, or any physical or mental disease.

44. The American College of Obstetricians and Gynecologists ("ACOG"), which is the preeminent professional association for OB/GYNs, recommends that all women should be counseled about prenatal genetic screening and diagnostic testing options as early as possible in the pregnancy, ideally at the first prenatal visit. ACOG recommends that all women, regardless

of age, be offered the option of screening or diagnostic testing for fetal genetic disorders. ACOG also recommends that women with positive screening test results be offered further counseling and diagnostic testing.

45. The Reason Ban provides an exception for circumstances where a woman has decided to have an abortion because of diagnosis or potential diagnosis of "lethal fetal anomaly," but that term is not statutorily defined. It is unclear whether this exception from criminal liability applies, for example, only to circumstances when the fetus would not be born alive or whether it includes circumstances when the child is likely to die would die within the first few months or years of life.

46. Thus, Plaintiffs face a very real threat of arbitrary enforcement, particularly given Defendants' repeated efforts to eliminate all access to abortion in the Commonwealth.[3]

47. The second exception for "medical emergencies" is extremely limited, and would not protect a patient who needs an abortion to protect her health but was not yet facing a medical emergency.

48. For example, some women with high-risk pregnancies—because of advanced maternal age or some other underlying medical condition—have complications that lead them to end their pregnancies to preserve their lives or health. In some of these situations, there is also a diagnosis or potential diagnosis of a fetal anomaly.

49. There are numerous conditions that pose a substantial mortality risk in pregnancy, including pulmonary hypertension and maternal cardiac disease, some with mortality risks as high as 50%.

---

[3] Defendants have repeatedly targeted Plaintiffs, and tried to eliminate abortion access in Kentucky. Plaintiffs now operate the only abortion clinic in the Commonwealth. *See* Sheryl Gay Stolberg, *Legal Fight Could Make Kentucky Only State With No Abortion Clinic*, N.Y. Times, May 2, 2017, https://www.nytimes.com/2017/05/02/us/kentucky-abortion-clinic.html.

50. The Reason Ban's extremely narrow exception for "medical emergencies" would not allow a woman whose health or life was at risk to decide to have an abortion if the diagnosis or potential diagnosis of a fetal anomaly was part of her decision, until her condition has so deteriorated as to constitute a medical emergency, at which point the procedure would be permitted under this law. This would unnecessarily jeopardize the health and even the life of the woman.

51. If a woman is forced to continue a pregnancy against her will, it can pose a risk to her physical, mental, and emotional health, and even her life, as well as to the stability and wellbeing of her family, including her existing children.

52. Absent an injunction, Plaintiffs will have no choice but to turn away patients in need of abortion care. The constitutional rights of Kentucky women would suffer irreparably, as would their well-being and dignity. The Bans irreparably harm Plaintiffs, Plaintiffs' staff, and their patients.

## **CLAIMS FOR RELIEF**

### COUNT I

(Substantive Due Process – 6-Week Ban and Reason Ban)

53. Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 52.

54. By imposing bans on abortion prior to viability, the 6-week Ban and the Reason Ban violates Kentuckians' right to privacy guaranteed by the Fourteenth Amendment to the United States Constitution.

### COUNT II

(Due Process—Vagueness – Reason Ban)

12

55. Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 52.

56. By failing to give Plaintiffs fair notice of how to comply with the mandates of the Reason Ban, and imposing serious criminal and licensure penalties, it violates Plaintiffs' right to due process as guaranteed by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

## INJUNCTIVE RELIEF

57. If the Bans are allowed to take effect, Plaintiffs and their patients will be subject to irreparable harm for which no adequate remedy at law exists.

58. Enforcement of the Bans will cause irreparable harm by threatening Plaintiffs and their staff with substantial criminal penalties for providing abortion services; and by preventing Plaintiffs' patients from obtaining an abortion in Kentucky, thereby causing them to suffer significant medical, emotional, and other harm.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs ask this Court:

A. To immediately issue a temporary restraining order and/or preliminary injunction, and a permanent injunction, restraining Defendants, their employees, agents, and successors in office from enforcing S.B. 9 and H.B. 5.

B. To enter a judgment declaring that S.B. 9 and H.B. 5 violate the Fourteenth Amendment to the United States Constitution.

C. To award Plaintiffs their attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

D. To grant such other and further relief as the Court deems just and proper.

Dated: March 15, 2019

                                                s/Amy D. Cubbage
Amy D. Cubbage
Ackerson & Yann, PLLC
734 West Main Street, Suite 200
Louisville, Kentucky 40202
(502) 583-7400
acubbage@ackersonlegal.com

Heather L. Gatnarek
ACLU of Kentucky
325 Main Street, Suite 2210
Louisville, Kentucky 40202
(502) 581-9746
heather@aclu-ky.org

Brigitte Amiri*
Jennifer Dalven*
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, New York 10004
(212) 549-2633
bamiri@aclu.org
jdalven@aclu.org

Leah Godesky*
O'Melveny & Myers
7 Times Square
New York, NY 10036
(212) 326-2000
lgodesky@omm.com

Kendall Turner*
O'Melveny & Myers
1625 Eye St. NW
Washington, DC 20006
(202) 383-5300
kendallturner@omm.com

*pro hac vice motions forthcoming*

ATTORNEYS FOR PLAINTIFFS

14

## DECLARATION

I declare under penalty of perjury that the statements contained in the Complaint are true and accurate to the best of my knowledge and belief.

*Ernest W. Marshall, M.D.*
Ernest W. Marshall, M.D.

15