UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

EMW WOMEN'S SURGICAL CENTER,
P.S.C. and ERNEST MARSHALL, M.D.,                                Plaintiffs,

v.                                             Civil Action No. 3:19-cv-178-DJH

ANDREW G. BESHEAR, in his official
capacity as Attorney General of the
Commonwealth of Kentucky, et al.,                                 Defendants.

\* \* \* \* \*

## TEMPORARY RESTRAINING ORDER

Plaintiffs EMW Women's Surgical Center, P.S.C. and Ernest Marshall, M.D. have moved for entry of a temporary restraining order prohibiting enforcement of House Bill 5, which was signed into law on March 19, 2019.[1] *See* https://apps.legislature.ky.gov/record/19rs/hb5.html. For the reasons explained below, the Court will grant Plaintiffs' motion.

Pursuant to Federal Rule of Civil Procedure 65, a court may grant a temporary restraining order without notice to the adverse party if

(A)     specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

(B)     the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b). In determining whether to grant a temporary restraining order, the Court considers the same four factors applicable to a motion for preliminary injunction: (1) the movant's likelihood of success on the merits; (2) whether the movant "would likely be permanently harmed

---

[1] The bill was passed on an emergency basis so that it would become effective upon approval by the governor.

1

absent the injunction; (3) whether the injunction would cause substantial harm to third parties; and (4) whether the injunction would serve the public interest." *McGirr v. Rehme*, 891 F.3d 603, 610 (6th Cir. 2018) (citing *S. Glazer's Distribs. of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017)); *see Ohio Republican Party v. Brunner*, 543 F.3d 357, 361 (6th Cir. 2008).

Having reviewed Plaintiffs' motion and supporting materials, and being otherwise sufficiently advised, the Court makes the following findings:

(1) Plaintiffs have shown a strong likelihood of success on the merits of their Fourteenth Amendment Due Process challenge to House Bill 5. The law prohibits abortions performed with knowledge that the abortion is sought, "in whole or in part," because of the sex, "race, color, or national origin of the unborn child," or "[t]he diagnosis, or potential diagnosis, of Down syndrome or any other disability." https://apps.legislature.ky.gov/recorddocuments/bill/19RS/hb5/bill.pdf.

The Court is aware of two similar state laws currently under review by federal courts. The first is an Indiana law, which has been held unconstitutional by the U.S. Court of Appeals for the Seventh Circuit. Relying on *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833 (1992), the Seventh Circuit rejected the state's argument that "non-discrimination provisions represent a 'qualitatively new type of abortion regulation,' and that [the state] has compelling interests in prohibiting discrimination of particular fetuses in light of technological advances in genetic screening." *Planned Parenthood of Ind. & Ky. v. Comm'r of the Ind. State Dep't of Health*, 888 F.3d 300, 307 (7th Cir. 2018). The court explained that "the Supreme Court has already weighed the State's interests against a woman's privacy right to terminate her pregnancy prior to viability: '*Before viability, the State's interests are not strong enough to support*

2

*a prohibition of abortion* or the imposition of a substantial obstacle to the woman's effective right to elect the procedure.'" *Id.* (quoting *Casey*, 505 U.S. at 846).

Observing that "[t]he interest protected by the Due Process Clause is a woman's right to choose to terminate her pregnancy pre-viability, and that right is categorical," the Southern District of Ohio has likewise rejected the argument "that women only have the right to choose whether to have a child, not the right to decide whether to have a *particular* child."[2] *Preterm-Cleveland v. Himes*, 294 F. Supp. 3d 746, 755 (S.D. Ohio 2018) (citing *Casey*, 505 U.S. at 879) (enjoining enforcement of ban on abortions sought because of fetal Down syndrome). Defendants point to no case in which a federal court has found such pre-viability "nondiscrimination" restrictions to be constitutional.

The Supreme Court recently reiterated that it "use[s] 'viability' as the relevant point at which a State may begin limiting women's access to abortion for reasons unrelated to maternal health." *Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2320 (2016) (citing *Casey*, 505 U.S. at 878). And again, "*Casey*'s holding that a woman has the right to terminate her pregnancy prior to viability is categorical: 'a State *may not prohibit* any woman from making the ultimate decision to terminate her pregnancy *before viability*.'" *Planned Parenthood of Ind. & Ky.*, 888 F.3d at 305 (quoting *Casey*, 505 U.S. at 879).

This Court may not simply ignore binding Supreme Court precedent; "only the U.S. Supreme Court has the power to decide whether to change the rule of [*Casey*]." *Planned Parenthood of Ind. & Ky. v. Comm'r of the Ind. State Dep't of Health*, No. 17-3163, 2018 U.S. App LEXIS 17676, at *3-*4 (7th Cir. June 25, 2018) (quoting *Casey*, 505 U.S. at 879) (noting that

---

[2] The Ohio case is currently on appeal before the United States Court of Appeals for the Sixth Circuit.

this was the "obvious" reason why "the state ha[d] not asked for rehearing *en banc* of the panel's ruling on the Sex Selective and Disability Abortion Ban" (internal citation omitted)). In light of the precedent cited above, Plaintiffs' challenge to House Bill 5 is likely to succeed.

(2) Plaintiffs have laid out specific facts in their Verified Amended Complaint (D.N. 5) showing that the rights of their patients would be immediately and irreparably harmed absent a temporary restraining order from this Court. As set forth in the Verified Amended Complaint, enforcement of House Bill 5 would ban certain pre-viability abortions in the Commonwealth of Kentucky. (D.N. 5, PageID # 76, 79)

(3) The balance of hardships also favors Plaintiffs because a temporary restraining order will preserve the status quo and allow the Court to more thoroughly assess the merits of the case. Although House Bill 5 states that "an emergency is declared to exist," little explanation accompanies this declaration. https://apps.legislature.ky.gov/recorddocuments/bill/19RS/hb5/bill.pdf. Accordingly, the Court finds that the reasonable period of delay resulting from this Temporary Restraining Order is necessary to permit meaningful review, with minimal impact to others.

(4) The entry of a temporary restraining order is in the public interest because preventing enforcement of a potentially unconstitutional state law benefits the citizens of the Commonwealth. *See ACLU Fund of Mich. v. Livingston Cty.*, 796 F.3d 636, 649 (6th Cir. 2015).

(5) Plaintiffs served a copy of their motion on the Kentucky Attorney General, General and Deputy General Counsel to Governor Matt Bevin, General Counsel for the Kentucky Cabinet for Health and Family Services, the Executive Director of the Kentucky Board of Medical

Licensure, and the Commonwealth's Attorney for the 30th Circuit of Kentucky, via electronic mail.[3]  (D.N. 6, PageID # 139)

(6) This Temporary Restraining Order is being entered without notice to Defendants to preserve the status quo and prevent irreparable harm until such time as the Court may hold a hearing.  A hearing on Plaintiffs' motion for preliminary injunction will be set by subsequent order.

(7) In light of the apparent strength of Plaintiffs' case with respect to the recently enacted House Bill 5 and the strong public interest involved in the issues raised, the Court concludes that requiring security pursuant to Federal Rule of Civil Procedure 65(c) is not appropriate in this case.  *See Moltan Co. v. Eagle-Picher Indus., Inc.*, 55 F.3d 1171, 1176 (6th Cir. 1995) (recognizing district court's discretion as to whether to require posting of security).

In accordance with the above findings, it is hereby

**ORDERED** as follows:

(1) Plaintiffs' Motion for a Temporary Restraining Order and/or Preliminary Injunction (D.N. 6) is **GRANTED** in part.

(2) Defendants Andrew G. Beshear, Adam Meier, Michael S. Rodman, and Thomas B. Wine, and all those acting in concert with them, are **TEMPORARILY ENJOINED** from enforcing, attempting to enforce, threatening to enforce, or otherwise requiring compliance with House Bill 5, to be codified in Chapter 311 of the Kentucky Revised Statutes.

(3) The requirement of security under Federal Rule of Civil Procedure 65(c) is **WAIVED** due to the strong public interest involved.

---

[3] Defendant Adam Meier, Secretary of the Kentucky Cabinet for Health and Family Services, has responded in opposition to Plaintiffs' motion.  (D.N. 12; D.N. 18)

(4) This Temporary Restraining Order is effective as of **5:00 p.m. on March 20, 2019**, and will expire **fourteen (14) days** from its entry in accordance with Federal Rule of Civil Procedure 65(b)(2) unless extended by subsequent order.

(5) Plaintiffs' motion for emergency hearing (D.N. 9) and motion for notice (D.N. 15) are **DENIED** as moot.

March 20, 2019

**David J. Hale, Judge**
**United States District Court**