UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:19-CV-00178-DJH

**EMW WOMEN'S SURGICAL**
**CENTER, P.S.C., et al.**                                                              **PLAINTIFFS**

**VS.**

**ERIC FRIEDLANDER, et al.**                                                            **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

Over the last few years, state legislatures have passed countless abortion regulations. The constitutionality of these regulations is being challenged in federal courts across the United States. Kentucky is no exception. In March of 2019, Plaintiffs EMW Women's Surgical Center, P.S.C., et al., filed the present action against state officials, seeking to enjoin implementation and enforcement of two Kentucky bills regulating a physician's ability to perform abortions: House Bill 5 and Senate Bill 9.

At issue currently is Plaintiffs' request that the case be stayed while several similar cases in other courts are fully adjudicated. (DN 68). Defendant Eric Friedlander, Secretary of Kentucky's Cabinet for Health and Family Services ("Defendant Friedlander"), consents to Plaintiffs' Motion to Stay. (*See* DN 68-1, at PageID # 731, n. 1). Intervening Defendant Commonwealth of Kentucky ex rel. Attorney General Daniel Cameron ("the Commonwealth") consents only to Plaintiffs' claims against Senate Bill 9 being stayed until the Supreme Court renders its decision in *Dobbs v. Jackson Women's Health*. (DN 69). The Commonwealth opposes Plaintiffs' requested stay as to their claims against House Bill 5 and asks the Court to immediately proceed with the litigation. (*Id.*).

Almost two months after Plaintiffs' Motion to Stay was fully briefed (DN 70), the Commonwealth filed a Notice of Supplemental Authority related to Plaintiffs' Motion to Stay (DN 71). Plaintiffs responded to this filing (DN 72), and the time for the Commonwealth to reply has expired.

Plaintiffs have relatedly requested that if the Court denies their Motion to Stay, they be given thirty days from such denial to file their response to the Commonwealth's pending Motion to Dissolve Temporary Restraining Order. (DN 74). The Commonwealth opposes this extension. (DN 74).

These matters have been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A).[1] (DN 62). Based on the following analysis, Plaintiffs' Motion to Stay (DN 68) is granted in part and denied in part, and Plaintiffs' Motion for Extension of Time (DN 74) is granted.

## I. Background

### A. Kentucky House Bill 5 and Kentucky Senate Bill 9

This case concerns the constitutionality of two bills the Kentucky Legislature passed in 2019 that regulate abortion. The first, House Bill 5 ("HB 5") or the "Reason Ban," was passed on March 12, 2019. It prohibits physicians and other medical professionals from performing abortive procedures if he or she:

> has knowledge that the woman is seeking the abortion, in whole or in part, because of any of the following:
>
> (a) The sex of the unborn child;
>
> (b) The race, color, or national origin of the unborn child; or
>
> (c) The diagnosis, or potential diagnosis, of Down syndrome or any other disability;

---

[1] Motions to stay are non-dispositive pretrial matters, upon which magistrate judges may directly rule. *See, e.g., Alford v. Rice*, No. 3:10-cv-424, 2011 WL 96485, at *1 (S.D. Ohio Jan. 10, 2011) (citing 28 U.S.C. § 636(b)).

except in the case of medical emergency.

H.R. 5, 2019 Reg. Sess. (Ky. 2019). A physician found in violation of this Bill will have their state license to practice medicine revoked and will be liable in a civil action for compensatory and punitive damages. *Id.*

The second, Senate Bill 9 ("SB 9"), was passed one day after HB 5 and prohibits physicians or other individuals from performing abortive procedures where a fetal heartbeat has been detected. S. 9, 2019 Reg. Sess., (Ky. 2019). Where a physician violates this law, the woman on whom the abortion was performed may file a civil action for the wrongful death of her unborn child. S. 9, 2019 Reg. Sess., (Ky. 2019). Former Kentucky Governor, Matt Bevin, promptly signed both bills.

### B. Plaintiffs' Case

On the day HB 5 passed, Plaintiffs, EMW Women's Surgical Center and Ernest Marshall, an owner and medical provider at EMW, filed this action challenging the Bill's constitutionality.[2] (DN 1). Plaintiffs allege HB 5 substantively violates due process and is void for vagueness. Plaintiffs amended their complaint one day later, adding a substantive due process challenge to SB 9. (DN 5). Within a week, the Court entered temporary restraining orders for each bill, barring enforcement of HB 5 and SB 9 for a period of fourteen days. (DN 14; DN 21).

In granting the temporary restraining order for HB 5, the Court cited two similar state laws currently under review by federal courts. (DN 21). The first was Indiana's "Non-Discrimination Provision," challenged in *Planned Parenthood of Ind. & Ky. v. Comm'r of the Ind. State Dep't of Health*, 888 F.3d 300, 307 (7th Cir. 2018). The second was Ohio's "Down Syndrome Ban,"

---

[2] Plaintiffs initially named Andrew Beshear (Kentucky Attorney General), Adam Meier (Secretary of the Cabinet for Health and Family Services), Michael Rodman (Executive Director of the Kentucky Board of Medical Licensure), and Thomas Wine (Commonwealth's Attorney for the 30th Judicial District of Kentucky) as Defendants. (*See* DN 1; DN 5). Later, Defendants Beshear, Rodman, and Wine were dismissed. (DN 16; DN 29; DN 30; DN 31).

challenged in *Preterm-Cleveland v. Himes*, 294 F. Supp. 3d 746, 755 (S.D. Ohio 2018). The Court noted that both cases rejected the state's argument that a woman does not have "the right to decide whether to have a particular child." (DN 21, at PageID # 256 (quoting *Preterm-Cleveland*, 294 F. Supp.3d at 755)). Based on these cases and binding Supreme Court precedent from *Roe v. Wade* and *Planned Parenthood v. Casey*, the Court found Plaintiffs' challenges to HB 5 were likely to succeed. (*Id.* at PageID # 256-57).

Rather than advancing to preliminary injunction proceedings, the parties agreed to extend the Court's temporary restraining orders "through the date of final ruling in this case." (DN 32). The Court issued a briefing schedule on April 17, 2019, requiring Plaintiffs to file an "initial brief in support of the relief sought by their amended complaint within forty-five days[.]" (DN 35). The Order noted that it might authorize limited discovery on discrete factual issues after the legal issues were briefed. (*Id.*). Plaintiffs subsequently moved for summary judgment (DN 36), which Defendant Meier opposed (DN 42).

In January of 2020, the Commonwealth of Kentucky, through Attorney General Daniel Cameron, sought to intervene in the case. (DN 53). Two months later, the Court administratively remanded Plaintiffs' summary-judgment motion pending the Sixth Circuit's resolution of *Preterm-Cleveland v. Himes*. As mentioned above, the Court cited to the district court's decision in *Preterm-Cleveland* when granting Plaintiffs' temporary restraining order. (DN 59). On November 30, 2020, the Court granted the Commonwealth's Motion to Intervene, directing its answer be filed in the record, and substituting Eric Friedlander, in his official capacity as Secretary of Kentucky's Cabinet for Health and Family Services, for Defendant Meier. (DN 60).

The Sixth Circuit issued its en banc ruling in *Preterm-Cleveland* on April 13, 2021. The District Judge thereafter referred this case to the undersigned for a status conference. (DN 62).

Following the call, Plaintiffs filed the instant motion to stay this case until three cases that "could impact" their challenges to HB 5 and SB 9 are decided.[3] (DN 68). These cases are: *Dobbs v. Jackson Women's Health Organization*, pending before the United States Supreme Court; *Little Rock Family Planning Services v. Rutledge*, on petition for writ of certiorari by the United States Supreme Court; and *Memphis Center for Reproductive Health v. Slatery*, pending rehearing en banc at the Sixth Circuit.

After Plaintiffs' Motion to Stay was fully briefed, the Commonwealth filed a Notice of Supplemental Authority, calling attention to the Sixth Circuit's February 4, 2022 Order in *Slatery*. (DN 71). On the same day he filed the Notice of Supplemental Authority, the Commonwealth also filed a Motion to Dissolve the Court's Temporary Restraining Order as to HB 5. (DN 72). Exactly one month later, the Commonwealth filed an "Emergency Motion for Ruling and/or Hearing" on its Motion to Dissolve the Court's Temporary Restraining Order as to HB 5. (DN 76).

C. Pending Cases Relevant to Plaintiffs' Case

Though not "currently pending," the Court begins with *Preterm-Cleveland v. Himes*. As noted above, this Court considered the Southern District of Ohio's decision in *Preterm-Cleveland* when granting the temporary restraining order as to HB 5. In *Preterm-Cleveland*, the plaintiffs challenged Ohio's "Down Syndrome Ban," which prohibits any person from performing or inducing performance of an abortion if they have knowledge that the pregnant woman is seeking the abortion in whole or in part because of a belief or diagnosis that the fetus has Down Syndrome. The district court preliminarily enjoined enforcement of Ohio's Down Syndrome Ban. 294 F. Supp. 3d 746, 755 (S.D. Ohio 2018).

---

[3] Because all parties have agreed to stay adjudication of Plaintiffs' claims regarding SB 9 until the Supreme Court decides *Dobbs*, the Court will grant Plaintiff's motion to that extent. The lone issue here is whether Plaintiffs' claims regarding HB 5 should also be stayed.

Several months after this Court temporarily restrained enforcement of HB 5, a three-judge panel at the Sixth Circuit affirmed the Southern District of Ohio's preliminary injunction. *Preterm-Cleveland v. Himes*, 940 F.3d 318 (6th Cir. 2019). But on rehearing en banc the Sixth Circuit reversed, finding plaintiffs were not likely to succeed on the merits of their claim and that the state offered legitimate interests in support of the law. *Preterm-Cleveland v. McCloud*, 994 F.3d 512 (6th Cir. 2021) (en banc).

Moving to the cases Plaintiffs claim could impact their challenges to HB 5, the first is *Dobbs v. Jackson Women's Health Organization*. At issue in *Dobbs* is the constitutionality of a 2018 Mississippi law that banned abortion operations after the first fifteen weeks of pregnancy. Applying the Supreme Court's landmark decisions in *Roe v. Wade* and *Planned Parenthood v. Casey*, the Fifth Circuit found Mississippi's law was an unconstitutional ban on pre-viability abortions. *Jackson Women's Health Org. v. Dobbs*, 945 F.3d 265 (5th Cir. 2019). In December 2021, the Supreme Court heard oral arguments in this case. Sources estimate the Supreme Court will render its decision by June 2022.

Plaintiffs also believe a petition for writ of certiorari pending before the Supreme Court in *Little Rock Family Planning Services v. Rutledge*, 984 F.3d 682, 690 (8th Cir. 2021), could influence their case. Similar to *Preterm-Cleveland*, *Rutledge* involves a challenge to Arkansas' "Down Syndrome Ban," which prohibits abortion if the physician has knowledge that the patient is seeking an abortion based on a fetal diagnosis of Down Syndrome. Ark. Code Ann. § 20-16-2103(a). The Eighth Circuit upheld the district court's preliminary injunction barring enforcement of Arkansas' Down Syndrome Ban, noting that "the Supreme Court may of course decide to revisit how [*Planned Parenthood v.*] *Casey* should apply to purpose-based bans on pre-viability abortions[.]" 984 F.3d at 690. The State's petition for writ of certiorari was filed on April 9, 2021.

Plaintiffs lastly identify *Memphis Ctr. for Reproductive Health v. Slatery* as a case that could impact their claims against HB 5. The plaintiffs in *Slatery* challenged Tennessee's "Reason Bans," which criminalize performance of an abortion if the physician "knows" the abortion is "because of" the race, sex, or a Down Syndrome diagnosis of the fetus. Tenn. Code Ann. § 29-15-217 (2020). They also challenged another portion of the same House Bill that criminalizes pre-viability abortions at cascading intervals of two to three weeks, beginning with the detection of a "fetal heartbeat" and continuing through a gestational age of twenty-four weeks. *Id.* § 39-15-216.

A three-judge panel at the Sixth Circuit upheld the district court's entry of a preliminary injunction prohibiting enforcement of Tennessee's reason ban and pre-viability bans. 14 F.4th 409, 434-35, 437 (6th Cir. 2021) [*hereinafter Slatery I*]. As to the reason ban, the Sixth Circuit found there was a substantial likelihood the plaintiffs would succeed on their void-for-vagueness challenges to the law but indicated the district court should in the first instance analyze the plaintiffs' substantive-due-process challenge. *Id.* The appellate court further directed the district court to analyze the ban on abortions for Down Syndrome separately from bans on abortions for reasons of race or sex. *Id.*

*Slatery* evolved procedurally while Plaintiffs' Motion to Stay was being briefed in this case. One day after the Commonwealth responded to Plaintiffs' Motion to Stay, a majority of the Sixth Circuit voted to rehear *Slatery* en banc. The Sixth Circuit vacated the previous panel's decision, stayed the mandate, and restored the case to the active docket as a pending appeal. *Memphis Ctr. for Reproductive Health v. Slatery*, 18 F.4th 550 (6th Cir. 2021) [*hereinafter Slatery II*].

Later, after Plaintiffs' Motion to Stay in this case was fully briefed, the majority in *Slatery* voted to stay the district court's preliminary injunction on Tennessee's "Reason Bans" pending

7

appeal. *Memphis Ctr for Reproductive Health v. Slatery*, -- F. 4th --, 2022 WL 304714, at *1 (6th Cir. 2022) (en banc) [*hereinafter Slatery III*]. This meant that Tennessee's reason bans could be enforced while the Sixth Circuit completed its en banc review. The Order also appears to stay the Sixth Circuit's en banc review of challenges to both Tennessee's reason bans and pre-viability bans until the Supreme Court decides *Dobbs*. *Id.* at 1 (Moore, J., dissenting) ("the majority . . . refuses to hear the case until after the Supreme Court issues its decision in *Dobbs v. Jackson Women's Health Organization*, No. 19-1392, on the grounds that the *Dobbs* decision could impact our decision on an entirely separate part of the law – the pre-viability bans.").

## II. Standard of Review

Trial courts have broad discretion to stay proceedings pending resolution of independent judicial proceedings elsewhere. *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). This power is incidental to the inherent power of every court to control the disposition of the cases on its docket "with economy of time and effort for itself, for counsel, and for litigants." *Id.* Despite this broad power, courts must "tread carefully in granting a stay of proceedings, since a party has a right to a determination of its rights and liabilities without undue delay." *Ohio Envtl. Council v. U.S. Dist. Ct., S. Dist. of Ohio, E. Div.,* 565 F.2d 393, 396 (6th Cir. 1977). "Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Id.* (quoting *Landis*, 299 U.S. at 255).

In determining whether to grant a stay, courts consider several factors: "the balance of the hardships, the potential harm to the public, and judicial economy and efficiency." *Caudill v. Wells Fargo Home Mortg., Inc.*, No. 5:16-066-DCR, 2016 WL 3820195, at *2 (E.D. Ky. July 11, 2016) (citing *IBEW, Local 2020 v. AT&T Network Sys.,* No. 88-3895, 1989 WL 78212, at *8 (6th Cir. July 17, 1989)). The most important of these is the "balance of hardships," in which "the moving

8

party has the burden of proving that it will suffer irreparable injury if the case moves forward, and that the non-moving party will not be injured by the stay." *Jones v. Good Shepherd Healthcare Solutions, Inc.*, No. 3:17-cv-411-DJH, 2017 WL 11535102, at *2 (W.D. Ky. Nov. 29, 2017) (quoting *IBEW, Local 2020*, 1989 WL 78212, at *8 (citing *Landis,* 299 U.S. at 255)). The moving party must show "there is pressing need for delay, and that neither the other party nor the public will suffer harm" from the stay. *Ohio Envtl. Council,* 565 F.2d at 396.

### III. Analysis

#### A. Pressing Need for Delay and Judicial Economy/Efficiency

Plaintiffs claim a pressing need for a stay exists because if no stay is issued, they will be forced to litigate the Commonwealth's Motion to Dissolve Temporary Restraining Order. (DN 68-1, at PageID # 736). Such litigation, Plaintiffs complain, would necessitate costly discovery, retaining of experts, and motion practice. Plaintiffs assert that the pending cases before the Supreme Court and the Sixth Circuit "could render such motion practice and discovery unnecessary or irrelevant." (*Id.* at PageID # 736-37). Staying proceedings for these same reasons, Plaintiffs explain, would benefit judicial economy and efficiency. (*Id.* at PageID # 737).

The Commonwealth counters Plaintiffs' allegations as to time and expense by emphasizing that Plaintiffs bear the burden of expending time, effort, and expense to prove their case. (DN 69, at PageID # 749-50). The Commonwealth points out that Plaintiffs' burden has been minimal in this litigation thus far due to the Court's prompt entry of the temporary restraining orders and administrative remand of Plaintiffs' Motion for Summary Judgment. (*Id.*). Even if Plaintiffs incur expenses when the stay is lifted, the Commonwealth notes these expenses are recoverable if Plaintiffs succeed on the merits. (*Id.* at PageID # 750).

9

Plaintiffs have not met their burden of proving a pressing need for delay. The Commonwealth is correct that in bringing this legal action, Plaintiffs should have expected to expend time, effort, and resources. Because Defendant Friedlander agreed to extend the Court's temporary restraining orders through conclusion of the case, Plaintiffs initially were spared costs and time associated with preliminary injunction proceedings. That Plaintiffs may now have to engage in motion practice related to the Commonwealth's Motion to Dissolve Temporary Restraining Order and may ultimately have to participate in preliminary injunction proceedings, does not establish a pressing need for delay.[4] Preliminary injunction proceedings commonly follow the entry of temporary restraining orders in cases where plaintiffs are requesting injunctive relief. It matters not that preliminary injunction proceedings in this case might occur later than normal because of the Commonwealth's intervention in this case.

Nor have Plaintiffs set forth persuasive evidence that future efforts and expense will be avoided by a stay while *Dobbs*, *Rutledge*, and *Slatery* are pending. Relevant to the judicial economy and efficiency inquiry is whether "a separate suit in another jurisdiction involves the same issues and parties and is likely to consider adequately all interests before the court considering a stay." *IBEW, Local 2020*, 1989 WL 78212, at *8. Throughout their Motion, Plaintiffs iterate that *Dobbs*, *Rutledge*, and *Slatery* could impact or could bear directly on their case. Plaintiffs' use of "could" belies the likelihood that these cases would "consider adequately all interests" in this litigation. While those three cases involve similar claims and similar parties to those here, Plaintiffs have not demonstrated that those cases individually or combined will fully resolve Plaintiffs' claims against HB 5 and obviate further merits proceedings in this case.

---

[4] The Court here makes no statement as to the merits of the Commonwealth's Motion to Dissolve Temporary Restraining Order.

Arkansas' Down-Syndrome Ban, challenged in *Rutledge*, is narrower than Kentucky's Reason Ban. As its moniker implies, Arkansas' law regulates those abortions where a physician has knowledge that the pregnant woman is seeking an abortion based on a fetal Down Syndrome diagnosis. Kentucky's "Reason Ban" includes prohibited categories of knowledge beyond a diagnosis of Down Syndrome. While the Supreme Court taking up *Rutledge* on certiorari could influence this Court's decision on the Down Syndrome restriction in HB 5, all interests in this case would not be resolved.

Tennessee's Reason Ban, at issue in *Slatery,* extends to when a physician has knowledge that the pregnant woman is seeking an abortion because of the sex, race, or Down Syndrome diagnosis of the unborn child. Kentucky's HB 5 likewise extends to the sex, race, and Down Syndrome diagnosis of the unborn child but differs from Tennessee's law in at least two respects. First, Tennessee uses the language "because of" to modify the knowledge requirement; whereas, Kentucky adds the qualifier of: "in whole or in part, because of . . ." H.R. 5, 2019 Reg. Sess. (Ky. 2019). And Kentucky includes "color," "national origin," and "the diagnosis or potential diagnosis of . . . any other disability" as additional prohibited categories of knowledge. *Id.* The distinctions in the statutory language of HB 5 and Tennessee's Reason Ban demonstrate that further adjudication of *Slatery*, while potentially guiding, likely will not entirely dispose of this action.[5]

That leaves *Dobbs*. The Supreme Court's decision in *Dobbs* will undoubtedly affect Plaintiffs' challenges to SB 9 because that law deals specifically with pre-viability abortions. The parties have agreed to stay the current proceedings regarding SB 9 until the Supreme Court decides *Dobbs*. The potential effect of *Dobbs* on the Plaintiffs' challenges to HB 5 is less clear. HB 5

---

[5] Plaintiffs acknowledge the differences between Kentucky's and Tennessee's respective reason bans, and state that even the Sixth Circuit's stay order in *Slatery* "is not indicative of how Kentucky's Reason Ban would be evaluated." (DN 73, at PageID # 786-87).

11

applies to all abortive procedures and does not distinguish between stages of pregnancy or viability. Once more, though *Dobbs* could influence the merits of Plaintiffs' challenges to HB 5, it will not likely implicate all interests at stake here.

Plaintiffs also fail to appreciate the impact of their requested stay. While *Dobbs* is expected to be decided in a few months, *Rutledge* is currently pending on a petition for writ of certiorari. Even if the Supreme Court ultimately grants the writ, final adjudication of *Rutledge* could take years. For reference, the petition for writ of certiorari in *Dobbs* was filed on June 15, 2020. The Supreme Court did not grant the petition until May of 2021, and oral arguments did not occur until December of 2021. The Supreme Court is not expected to render a decision in *Dobbs* until June of 2022. Hypothetically, if *Rutledge* were to follow the same timeline as *Dobbs*, a final decision could be expected around April of 2023, over a year from now.

And because *Slatery* is stayed pending adjudication of *Dobbs*, the Court cannot estimate when the Sixth Circuit will issue its en banc decision. Even if the Court stayed this case while *Dobbs*, *Rutledge*, and *Slatery* were pending, more cases challenging similar anti-abortion restrictions could proceed through the appellate courts in the meantime.[6] The current case has been pending for close to three years and was paused for over a year while *Preterm-Cleveland* was decided. This case being stalled in the Court's docket for an indefinite period does not support judicial economy and efficiency.

### B. Harm to Defendants

Plaintiffs next argue that a stay in proceedings will not prejudice the Commonwealth because the Court previously determined that HB 5 is likely unconstitutional when granting the

---

[6] The Sixth Circuit commented in its panel decision in *Slatery* that "state legislatures recently have passed more anti-abortion regulations than perhaps at any other time in this country's history." *Slatery*, 14 F.4th 409, 437 (6th Cir. 2021).

temporary restraining order. (DN 68-1, at PageID # 737-38). Had the Commonwealth been concerned with harm, Plaintiffs claim it would have attempted to lift the temporary restraining order or otherwise raise the issue of harm in the seven months between the Sixth Circuit's decision in *Preterm-Cleveland* and the November 10, 2021 status conference. (*Id.*).

The Commonwealth responds that Plaintiffs ignore its sovereign interest in being able to enforce its own laws. (DN 69, at PageID # 747 (citing *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers); *Abbott v. Perez*, 138 S. Ct. 2305, 2324 n. 17 (2018))). The Commonwealth further emphasizes that "the playing field has changed dramatically" since the Court temporarily restrained enforcement of HB 5. (*Id.*). The Sixth Circuit in *Preterm-Cleveland*, the Commonwealth points out, has since recognized that states have a valid and legitimate interest in enforcing abortion regulations. (*Id.* at PageID # 747-48). As to Plaintiffs' contention that it delayed in challenging the temporary restraining order, the Commonwealth explains that it was considering the implications of the Sixth Circuit's decisions in *Slatery* and *Preterm Cleveland* when this case was referred to the undersigned for a status conference. (*Id.* at PageID # 749 n. 3).

In reply, Plaintiffs reason that a stay in these proceedings differs from those cases cited by the Commonwealth to support the State's sovereign interest in enforcing HB 5. (DN 70, at PageID # 758-59). Plaintiffs specify that *King* was an "in-chambers" decision and that *Abbott* involved the urgent matter of an impending election. (*Id.*). Plaintiffs distinguish that no concrete harm to the Commonwealth would flow from a stay in this case. (*Id.*).

While the facts of *King* and *Abbott* differ from those here, the legal principle from *King* remains sound: "[a]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." 567 U.S. at 1303. A caveat to this principle exists, however. "[T]he State has no interest in enforcing laws that are

13

unconstitutional." *Little Rock Fam. Planning Servs. v. Rutledge*, 397 F. Supp. 3d 1213, 1322 (E.D. Ark.), *aff'd in part, remanded and vacated in part*, 984 F.3d 682 (8th Cir. 2021). An order or injunction preventing a State from enforcing unconstitutional acts, therefore, "does not irreparably harm the State." *Id.*

Plaintiffs discount potential harm to the Commonwealth based on the Court's finding in March of 2019 that Plaintiffs have a strong likelihood of success in challenging the constitutionality of HB 5. (DN 21, at PageID # 255). But several notable developments have occurred since the Court's temporary restraining order was entered.[7] First, *Preterm-Cleveland*, a case this Court relied upon in granting Plaintiffs' temporary restraining order, proceeded to panel review and then en banc review at the Sixth Circuit. Ultimately, the Sixth Circuit overturned the Southern District of Ohio's preliminary injunction barring enforcement of Ohio's "Down Syndrome Ban." The court found plaintiffs were not likely to succeed on the merits of their claim and that the state offered legitimate interests in support of the law. *Preterm-Cleveland v. McCloud*, 994 F.3d 512 (6th Cir. 2021). Similarly, since entry of the temporary restraining order in this case, the Sixth Circuit has agreed to rehear *Slatery* en banc, 28 F.4th 550, and permitted Tennessee's Reason Ban to be enforced while the en banc proceedings are pending, 24 F.4th 1069.

As for the timing of the Commonwealth's Motion to Dissolve Temporary Restraining Order, the Court agrees with Plaintiffs that the Commonwealth could have sought relief from the temporary restraining order earlier. Its delay in doing so, however, does not diminish the State's interest in enforcing a bill that its legislature enacted. For these reasons, this potential harm to the Commonwealth weighs against staying the case.

---

[7] Again, the Court makes no finding as to the merits of the Commonwealth's pending Motion to Dissolve the Temporary Restraining Order.

C. Harm to the Public

Plaintiffs claim the public would not be harmed by a stay because the Court previously determined that the public interest is served by preserving the status quo. (DN 68-1, at PageID # 738). Plaintiffs cite to two cases from the Eighth Circuit and one from the Eleventh, where courts have stayed proceedings pending the Supreme Court's decision in *Dobbs*. (*Id.* (citing *Hopkins v. Jegley*, No. 21-1068 (8th Cir. May 26, 2021); *Little Rock Fam. Planning Servs. v. Jegley*, No. 21-2857 (8th Cir. Sept. 14, 2021); *SisterSong v. Kemp*, 20-12024 (11th Cir. Sept. 27, 2021))). The Commonwealth responds that continuously staying challenges to abortion laws every time there is a pending appellate case on an abortion-related issue harms the public by placing the courts in a constant holding pattern and lengthening the decision-making process. (DN 69, at PageID # 754).

Again, notable legal developments have materialized since the Court's entry of the temporary restraining order in this case in March of 2019. The public's interest in preserving the status quo, accordingly, has changed over the last three years. And the three cases that Plaintiffs cite as being stayed pending *Dobbs* are all at the appellate level. Staying a case at the appellate level has different implications than staying a case at the district level, where fact-finding occurs. Plus, Plaintiffs here are requesting their case be stayed for months, or even years, following the *Dobbs* decision. Staying this case indefinitely while other abortion regulations are litigated would delay adjudication of this case, thereby preventing fact-finding on the claims at issue here. This factor weighs against staying this litigation.

D. Balancing of Hardships

That leaves the most critical factor in the Court's analysis, the balancing of hardships. This factor requires Plaintiffs to prove they will suffer irreparable injury if the case moves forward and that the non-moving party will not be injured by the stay. Plaintiffs have not carried their burden**.**

15

Beyond alleging they will be forced to participate in motion practice and discovery that may prove to be unnecessary, Plaintiffs identify no "irreparable injury" they will suffer. The Court noted above that Plaintiffs' allegations regarding time, effort, and expense were speculative because *Dobbs*, *Rutledge*, and *Slatery* are not likely to entirely resolve the merits of Plaintiffs' challenges to HB 5.

Likewise, Plaintiffs have not demonstrated that the Commonwealth would not be harmed by the stay. Plaintiffs mainly rely on the Court's March 2019 determination that Defendants would not be harmed by entry of the temporary restraining order. As discussed extensively in III.B. above, circumstances have changed since the Court's temporary restraining order was entered within a week of the case being filed. Almost three years have passed since that time. And during those three years, significant legal developments have occurred. The harm that an indefinite stay would cause to the Commonwealth, the public, and the judiciary's ability to move this case forward outweighs the speculative harm Plaintiffs have proffered. Because the factors for determining whether to grant a stay weigh heavily in the Commonwealth's favor, the Court will deny Plaintiffs' requested stay of this litigation as to its claims against HB 5.

E. Plaintiffs' Motion for Extension of Time to Respond to the Commonwealth's Motion to Dissolve Temporary Restraining Order

Plaintiffs request that if the Court denies their Motion to Stay, they be given thirty days to respond to the Commonwealth's Motion to Dissolve Temporary Restraining Order. (DN 74). Plaintiffs argue the Commonwealth's Motion to Dissolve is not urgent, as demonstrated by its delayed filing. (*Id.*). The Commonwealth opposes Plaintiff's requested extension, arguing that further prolonging adjudication of its Motion to Dissolve will irreparably harm the Commonwealth. (DN 75). The Commonwealth asks the Court to consider and rule on its Motion to Dissolve immediately for largely the same reasons it opposes Plaintiffs' Motion to Stay. (*Id.*).

16

Finding Plaintiffs' requested extension to be reasonable in light of the circumstances in this case, the Court grants Plaintiffs' Motion and extends their response deadline thirty days from date of entry of this Order.

### IV. Order

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion to Stay Proceedings (DN 68) is **GRANTED IN PART AND DENIED IN PART.** As to Plaintiffs' claims against SB 9, Plaintiffs' Motion to Stay is **GRANTED**, and these claims will be stayed pending the Supreme Court's resolution of *Dobbs.* As to Plaintiffs' claims against HB 5, Plaintiffs' Motion to Stay is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Extension of Time to Respond to the Commonwealth's Motion to Dissolve Temporary Restraining Order (DN 74) is **GRANTED.** Plaintiffs shall have thirty (30) days from date of entry of this Order to respond to the Commonwealth's Motion to Dissolve Temporary Restraining Order. The Commonwealth's reply brief shall be filed in accordance with the Local Rules, unless otherwise requested.

Regina S. Edwards, Magistrate Judge
United States District Court

March 16, 2022

Copies:     Counsel of Record